## In re KEELING.

### Patent Appeal No. 4858.

Court of Customs and Patent Appeals.

Feb. 7, 1944.

Russel N. Low, of Washington, D. C. (Henry Love Clarke and Thomas J. P. O'Brien, both of Baltimore, Md., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Certain claims having been allowed in appellant's application for a patent relating to a vapor phase cracking process for converting hydrocarbon oils, the Primary Examiner of the United States Patent Office rejected claims 11 to 15 inclusive, and his decision was, upon appeal, affirmed by the Board of Appeals. From the latter decision, the applicant has here appealed.

Except as is otherwise indicated herein, claim 11 is regarded as illustrative of all the appealed claims and reads:

"11. A process for converting hydrocarbon oils into hydrocarbons having a lower molecular weight, including the steps of vaporizing the hydrocarbons, initially heating the hydrocarbons in the vapor phase by heat supplied thereto by indirect heat exchange through a sufficient time interval to partially convert the same and completing the conversion of said vapors by direct heat exchange, the heating in the indirect and the direct heat exchange steps being effected in separate zones and with separate supplies and off-flow of the heating gases separately controlled for separate independent regulation of heating of the respective steps."

While the record discloses a somewhat lengthy and interesting history of the prosecution of appellant's application through the Patent Office, the issues here presented do not require a consideration of most of this subject matter to which our attention has been called by appellant.

The invention of appellant's application relates to the cracking of oil vapors in two stages. In the first stage, the oil, which is heated in one set of pipes within a furnace to vaporize it, is passed out to a flash evaporator, and the vapors are returned to a second set of pipes within the same furnace, where some cracking is effected. The heating in this partial cracking stage is regarded as being accomplished by "indirect heat exchange." From this stage, the partially cracked vapors are passed out to mixing chambers and reaction chambers, where they are mixed with hot combustion gases at a higher temperature than the oil vapors and the cracking is finally completed. With what happens to the vapors after being mixed with said combustion gases, we are not concerned in the issues to be determined here.

The references relied upon are: Heid, 1,981,144, Nov. 20, 1934; Beardsley et al., 1,842,319, Jan. 19, 1932.

A detailed explanation of the somewhat complicated Heid and Beardsley et al. disclosures is not regarded as necessary here. The same would not add to clarity unless several drawings and a great number of numerals were herein inserted. In view of the fact that the issue seems to be narrowed down to one which we regard as not being close we shall content ourselves with general statements as to the nature

of appellant's process and those disclosed in the references.

Heid's process of conversion of hydrocarbon oils is to pump oil through a heating coil, where it is vaporized to a large extent. It is then passed further into the cracking system where the oil vapors are heated by indirect heat exchange. They are afterwards mixed with hot combustion gases, and the heating is there accomplished by direct heat exchange, as is true in appellant's method. Thus, we have the two stages of heating the oil vapors—indirect heat exchange and direct heat exchange. However, there is no teaching in Heid relating to the following limitation of claim 11: "with separate supplies and off-flow of the heating gases separately controlled for separate independent regulation of heating of the respective steps." It is clear that Heid does not meet this limitation; and the question was presented to, and decided by, the Patent Office tribunals as to whether or not it amounted to invention to employ separately regulable separate supplies of heating gases for heating the oil vapors in two zones instead of a single supply of heating gases as in Heid's disclosure. It was held by the tribunals below that the limitation did not lend invention to the claim over the Heid patent in view of the teaching of the Beardsley et al. patent.

Beardsley et al. show the principle of separately supplying and separately controlling the heating gases for the direct and indirect heat exchange steps. It was the conclusion of the tribunals that it would not amount to invention to modify the Heid process in accordance with the suggestion of the Beardsley et al. patent.

We quote the following from the examiner's statement:

"The examiner holds that in view of the teaching in Beardsley et al of the principle of separately supplying and separately controlling the heating gases for the indirect and the direct heat exchange steps, there would be no invention in modifying the Heid process so that the heating gases which supply heat to the indirect heat exchange step carried out in the annular passage 48a are supplied separately from, and controllable independently with respect to, heating gases which supply heat to the direct heat exchange step carried out in reaction zone 49."

After rejecting claim 11 upon Heid in view of Beardsley et al., the examiner had the following to say with reference to the remaining claims:

"Claim 12 adds to claim 11 that the cracking in the second stage (i.e. the 'direct heat exchange step') is effected by commingling with hydrocarbons with an inert gas at temperatures sufficienlty [sic] high to produce additional conversion. The 'inert gas' which applicant uses is combustion gas, which is the same gas that Heid uses. Claim 12 is rejected similarly to claim 11.

"Claim 13 adds nothing to the two preceding claims and is similarly rejected.

"Claim 14 differs from the preceding claims in calling for passing oil vapor 'in an elongated confined stream' through the first stage. The annular passageway 48a of Heid is considered to meet this requirement. Moreover the use of coils such as 35 of applicant's apparatus is conventional in the art, see element 30 of Beardsley et al.

"Claim 14 further recites 'controlling the velocity of the flow of the vapor' from the elongated confined stream to permit a sufficient time interval to partially crack a substantial amount of vapors. Heid clearly discloses (lines 52 to 69 page 2 and lines 15 to 19 page 3) that cracking of the vapors occurs in the annular space 48a. Accordingly Heid must allow the vapors sufficient time interval in said space for this reaction to occur. The manner of achieving this time interval, whether it be by control of the velocity of the flow of the vapor from the elongated confined space or by some other method is not considered to be patentable material. The important thing is that cracking is to occur in the elongated confined stream. Heid discloses this. Any difference between the reaction which occurs in applicant's coil 35 and that which takes place in space 48a of the Heid discolsure [sic] is a difference in degree only and not a patentable difference in kind. Claim 14 specifies that hot gases of combustion for heating the second stage are generated in quantities independently of the supply to the preliminary cracking zone. As already stated in connection with preceding claims, the examiner's view is that the generation of combustion gases for heating the second stage of cracking in Heid's process (i.e. the stage in which combustion gases are directly commingled with vapors in 49) separately from the gases which are used for heating the first stage,

would lack invention in view of Beardsley et al.

"Claim 14 is rejected similarly to the preceding claims.

"Claim 15 adds to the preceding claims that the initial vaporization if [of] the oil is carried out without substantial cracking. This is disclosed by Heid, lines 85 to 97 page 1, and lines 8 to 14 page 2. Claim 15 also states that the initial stage of cracking (i.e. the 'indirect heating' stage) is carried out 'in a pipe coil still' zone. This is an apparatus limitation which should not carry weight in a process claim. The annular passageway 48a of Heid is considered the full equivalent, from a process standpoint, of the 'pipe coil still'. As remarked in connection with claim 14 the use of pipe coils in an analogous environment is conventional in the art, and attention is called to element 30 of Beardsley et al."

The Board of Appeals, in affirming the examiner's rejection of all the appealed claims, had the following to say:

"After careful consideration, we find no new or unobvious result produced by separating the heating means of Heid into two units rather than employing a common heating means for both effects. Heid very clearly points out that he intends to accomplish cracking by two stages like those of the claims, namely, a first stage by indirect heating in zone 48a and then by direct heating in zone 49 by admixture with hot products of combustion. We believe over the disclosure of Heid, particularly in view of Beardsley et al disclosing quite an analogous arrangement of steps, that no invention is involved in thus very broadly providing two burners rather than a single one. Thus, while admitting that the terms of the claims do not directly read upon one citation, we hold that they fail to present improvement amounting to invention.

"We are in agreement with the examiner's conclusions in respect to the more limited or subordinate details found in some of the claims and his conclusions as to lack of invention in them."

Appellant argues in this court, notwithstanding the features of the two references pointed out by the examiner and the board, that it was improper to combine the two references in the manner which the tribunals have done. The main point of his contention seems to be that, while Beardsley et al. have two separate heating elements and employ one to increase the temperature of the vapors and the other to supply combustion gases for the cracking, the difference between the disclosure of the combined references and the disclosure of his application, for the most part, resides in the fact that he has emphasized the necessity of partially cracking his hydrocarbon vapors in his first vapor unit, whereas Beardsley et al. teach that it should be rushed through this unit with sufficient speed so that no cracking should there take place and thus avoid what is known as parasitic cracking, which is injurious to the coils by reason of carbon incrustation, and Heid fails to teach that the cracking in his indirect heating zone is limited to only "initial" or "partial" cracking.

It is true that Beardsley et al. do not contemplate the cracking of the vapors in the coil in question, and appellant urges that this is an important feature since it is the opposite of his teaching and contrary to the limitations of the claims, such as that found in claim 11, i.e., "through a sufficient time interval to partially convert the same and completing the conversion of said vapors by direct heat exchange."

It is pointed out by the Solicitor for the Patent Office, and attention is called to it in the decision of the board, that the patent to Beardsley et al. states that the vapor is heated in the vapor heating coil to a cracking temperature of 800° to 900° F. It is also mentioned that in the reaction chamber where the cracking is completed, the temperature is stated to be 1020° F. These temperatures compare closely with the temperatures of 900° and 1050° F. specified in appellant's application as existing in the two cracking zones respectively.

It seems to us that Beardsley et al., while not desiring any cracking in their indirect heating zone, seek to accomplish the same purpose as appellant, in that they both do not desire enough cracking to take place in this zone to cause carbon deposit. So, they both teach that the vapors passing through this zone should be hurried through for fear of excessive carbon deposit. The appellant seems to think that some cracking in this zone is permissible, while Beardsley et al. think otherwise. Appellant mentions that he accomplishes his purpose in permitting some cracking without undesirable carbon formation by regulating and controlling the rate of flow at this point and by the shortness of the tubes constituting

this cracking element. It will be noticed, however, that there is nothing in the claims which specifies how such regulation and control is to be brought about (the same is true of the Beardsley et al. patent), nor is there any suggestion in the claims or in appellant's application as to how long or short said tubes should be.

So, it seems to us that if the Beardsley et al. idea of separately supplying and separately controlling the heating gases for the indirect and direct heat exchange steps is incorporated into the Heid process, the modified structure could be operated to produce, in substantially the same way, the same result which appellant teaches.

■ Where substantially the same temperatures prevail and the same structure (as far as the instant question is involved) is operated by appellant as that utilized by Beardsley et al., it does not seem to us to be inventive to teach that a slight slowing down of the flow of vapors through the coils will produce a more desirable result. The difference between Beardsley et .al.'s no cracking and appellant's partial cracking would seem to be a matter of degree. Neither appellant nor the patentees want oil cracking in this place to the extent of depositing carbon in harmful quantities. If Beardsley et al., in order to make certain that there was not sufficient cracking in the indirect heating zone to cause undesirable carbon incrustation, should so control the speed or amount of the stream of oil vapors through their shortened pipe coil as to produce the result of what appellant regards as "partial cracking," they would infringe appellant's claims if in a patent. This would seem to be anomalous.

In his application, appellant emphasizes the advantage of shortening his indirect heating coil over that disclosed in the "processes of DeFlorez, Greenstreet, Hall, and in the Gyro process," but it is not seen how this element alone is an advancement over the art when we consider the Beardsley et al. device. Beardsley et al. show a relatively short coil, and if appellant's coil is shorter than that of Beardsley et al., it would be difficult to understand how this fact alone would produce "initial cracking" in appellant's device as opposed to no cracking in the Beardsley et al. device.

■ We agree with the Patent Office tribunals that there is no invention in appellant's disclosure over the references. Therefore, claim 11 was properly rejected for the reasons stated by the tribunals below.

The examiner has pointed out the limitations relied upon in the remaining claims, not found in claim 11, and in the language above quoted held that such limitations do not impart invention over the references. The board, without quoting the details of the examiner's statement in this regard, stated that it agreed with the examiner's conclusions in respect to these claims. We find ourselves in the same position. Since, as before found, claim 11 is not inventive over the prior art references cited, it is our view that the limitations in the other claims do not lend inventiveness to those claims over the prior art cited, for the reasons stated by the examiner and approved by the board.

The decision of the Board of Appeals is affirmed.

Affirmed.